**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
|     JASON WILLIAM KOONTZ | ) | CASE NO.    09-30024 |
| | ) | |
|     KRISTIN MAUREEN KOONTZ | ) | |
| | ) | Adv. No.  10-03005 |
|     Debtors | ) | |
| _____ | ) | |
| | ) | |
|     KRISTIN MAUREEN KOONTZ, | ) | |
|         Plaintiff | ) | |
| vs. | ) | |
| EVERHOME MORTGAGE | ) | |
|  COMPANY,  et. al., | ) | |
| | ) | |
|     Defendants. | ) | |

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

This case pits the Indiana law requiring recordation of assignments of mortgages in order to perfect a security interest in real estate against "an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked" that "eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans"[1], in the context of a Chapter 13 bankruptcy.  This case is not simply about whether Everhome is the proper party in interest entitled to enforce the Note and Mortgage through the filing of a proof of claim.  It is a case wherein the Defendants have attempted to mislead the Court, and it is a case that requires the Court to decide whether a broken chain of custody of the

_____

[1]  See, www.mersinc.org.

1

Note and the lack of recording of alleged assignments of the Mortgage allow the Debtor to

exercise the status of bona fide purchaser with the right to avoid the alleged transfers of the Note

and the obligations claimed under the mortgage, pursuant to the powers of 11 U.S.C. §544(a)(3).

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if there are no genuine issues as to any material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  A fact is

"material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202(1986), *Hoffman-Dombrrowski v. Arlington Intern.*

*Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001).

Plaintiff's Complaint alleges :

| | |
|---|---|
| Count I: | That Rule 3001(c) and Rule 3001(d) of the Bankruptcy Rules require a party filing a proof of claim to attach copies of documents providing evidence of perfection of a security interest that was perfected prior to the filing of the bankruptcy. |
| Count II: | That the proof of claim filed by Everhome fails to prove that the Note under which they claim entitlement to payment was received prior to the filing of the bankruptcy. |
| Count III: | That Everhome violated the automatic stay by attempting to obtain the Note and Assign the Mortgage after the filing of the bankruptcy petition. |
| Count IV: | That Everhome is not the "real party in interest" to claim payment from the bankruptcy estate. |
| Count V: | That the Plaintiff can exercise the rights of a bona fide purchaser under 11 U.S.C. §544(a)(3) to set aside the purported claim of Everhome for lack of perfection of a security interest in the real estate. |
| Count VI: | That <u>Everhome</u>  (not EverBank) violated 15 U.S.C.§1641(g) if in fact it received Assignment of the Note and Mortgage on July 15, 2009. |

As is evidenced by Defendants' "Statement of Material Facts Not in Dispute", the

material facts critical to a determination of the issues in Counts I through IV are:

A. Who held the Note on the date of the filing of the bankruptcy petition?

2

B.      Who is entitled to collect from the bankruptcy estate on the Note?

C.      Is the Note secured by the real estate of the Plaintiff?[1]

STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

Trustcorp gave the Note signed by Kristin to National City Bank.  (Trustcorp Response to Request for Production of Documents, Letter from Rhonda Cox, 1st Source Bank, attached hereto as Exhibit 1).[2]  Although Everhome claims that it acquired the Note and had possession of the "original note endorsed in blank at all relevant times during this bankruptcy case" (Aff. of Lorri Beltz, filed October 13, 2009, as Doc. 98 and attached hereto as Exhibit 3), the responses to Plaintiff's Request for Production of Documents from Everhome tell quite a different story. (Collections/Customer Service Loan Activity Archive consisting of 10 pages attached hereto as Exhibit 4).

On March 13, 2009, Juanita Webster  requested copies of the Note and Mortgage as a "courtesy" for the proof of claim filing.  (Ex. 4, pg. 8).  A request was sent to U.S.Bank, who provided copies of the Note and Mortgage on March 20, 2009.  (Ex. 4, pg. 8).  A request was then made for a copy of a recorded Assignment from MERS as nonimee for lender, Trustcorp, to Everhome.  (Ex. 4, pg. 8).

On May 5, 2009, Everhome filed a proof of claim, designated as Claim 22 in the Court's Claim Register.  The proof of claim had a copy of the mortgage and an itemization of the claim

---

[1]  Defendants did not address Plaintiff's Count V in their Motion for Summary Judgment. Furthermore, Plaintiff did not allege that EverBank violated 15 U.S.C. §1641(g), but that Everhome may have violated the statute.  Defendants Motion for Summary Judgment on Count VI is not responsive to Plaintiff's Complaint.

[2]  Trustcorp was acquired by 1st Source Bank on or about May 3, 2007.  (Exhibit 2).

3

attached,[3] but no evidence of the perfection of a security interest via assignment.  On May 6, 2009, Debra Miller, Standing Chapter 13 Trustee, contacted Corey Robertus of Moss Codilis and requested chain of title documentation from Trustcorp to Everhome.  (Exhibit 5, Trustee's Objection to Claim, ¶ 5).  Again, on June 10, 2009, the Trustee requested chain of title documentation.  (Ex. 4, ¶ 6).  This prompted a June 11, 2009 message from Eboni Williams to Cory Robertus asking that Moss **prepare** an Assignment of Mortgage.  (Ex. 4, pg. 6).

Additional requests for Mr. Robertus to prepare the assignment were made by Everhome, but, on June 22, 2009, Mr. Robertus informed Everhome that "Moss is not currently contracted to prepare assignments for EHM".  (Ex. 4, pg. 6).   On June 30, 2009, an unrecorded assignment was received from U.S. Bank that was from MERS to "blank".  (Ex. 4, pg. 5).  Since there was no valid assignee in the original assignment provided by U.S. Bank, a flurry of activity occurred in order to make sure an assignment would be prepared for use by Everhome.  (Ex. 4, pgs. 4 & 5).

On August 6, the Standing Chapter 13 Trustee objected to the original proof of claim.  The assignment was finally drafted on August 17, 2009.  (Ex. 4, pg. 4).  On September 9, 2009, Everhome filed an amended claim attaching the Note, Mortgage, and the unrecorded Assignment of Mortgage.  On September 10, 2009, Plaintiff filed an objection to the proof of claim.

The assignment that was prepared purported to assign "all beneficial interest" under the mortgage from MERS as nominee for Trustcorp to Everhome.  (Exhibit 6).  Bethany Hood, who signed the Assignment as VP of MERS, is not an employee of MERS.  (Answer to Complaint by MERS, ¶30).  The assignment was dated July 17, 2009 with an effective date of July 15, 2009.

---

[3]  Plaintiff disputes the itemization of claim that includes a one month payment arrearage.

4

(Ex. 6).

It was not until September 17, 2009 that the original note was requested from U.S. Bank. (Ex. 4, pg. 1). It was forwarded from Everhome to their attorney on September 21, 2009. (Ex. 4. Pg. 1).

Lorri Beltz, in her Supplemental Affidavit of Everhome Mortgage Company stated under oath that **EverBank** acquired the Note and Mortgage from Trustcorp effective November 1, 2006. (Ex. A to Defendants' Brief in support of Motion for Summary Judgment, ¶ 10, also attached hereto as Exhibit 7).

How National City, Everhome, and EverBank could all possibly have physical possession of the Note on November 1, 2006 is a question of fact that raises a genuine issue of material fact precluding summary judgment. (See, Ex. 1, Ex. 3, Ex. 7) If Everhome held the Note on the date of filing, why did U.S. Bank have possession of the Note on September 17, 2009? If EverBank had possession of the Note on November 1, 2006, how and when did U.S. Bank obtain the Note? If Trustcorp gave the Note to National City on November 1, 2006, how did EverBank have possession of it on that same day?

The fabrication of documents in response to the Trustee and Debtor's objections illuminates the lengths that Everhome has gone to in order to circumvent the statutorily required documentation required by the proof of claim process. Everhome's systemic abuse of the proof of claim process raises even more genuine issues of material fact with regard to whether Everhome ever had the right to claim money from the bankruptcy estate, let alone on the date of the filing of the bankruptcy.

LEGAL ARGUMENT

5

A.   What rights to collect on the Note exist if the Note is separated from the Mortgage through a failure to record an Assignment of Mortgage as required under Indiana law to protect the mortgagee from a bona fide purchaser?

B.   Was the entity who had possession of the Note on the date of the filing of the bankruptcy petition a Holder entitled to collect upon the Note?

<u>A.  Separation of the Note from the Mortgage</u>

Critical to the issues in dispute is the question of who, if anyone is entitled to collect upon the Note.   We know that the Note was payable only to Trustcorp.  We know that MERS was never entitled to payment on the Note. (MERS Answer to Complaint, ¶57).

In *Landmark National Bank v. Kesler*, 216 P.3d 158 (Kan. 2009), the Supreme Court of Kansas analyzed the severance of note and mortgage when the MERS process is followed.

> The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is "[o]ne to whom property is mortgaged: the mortgage creditor, or lender."  Black's Law Dictionary 1034 (8th ed. 2004).  By statute, assignment of the mortgage carries with it the assignment of the debt.  K.S.A. 58-2323.  Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation.  The document consistently limits MERS to acting "solely" as the nominee of the lender.
>
> Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.
>
> "The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citations omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.  The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes

6

ineffectual when the note holder did not also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W. 3d 619, 623 (Mo. App. 2009).*

The Note signed by Plaintiff was secured by a mortgage on property located at 615 South Street, Mishawaka, IN 46544. Payments under the Note were to be made to Trustcorp at P.O. box 149, South Bend, IN 46624. The Note does not reference Mortgage Electronic Registration Systems, Inc. ("MERS").(Note attached to Everhome proof of claim).

The mortgage referred to in the Note stated:

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ('MERS")(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary.

The mortgage then defined Trustcorp Mortgage Company as the "Lender", and states:

Borrower owes Lender the principal sum of Seventy Five Thousand Two Hundred Seventy Seven and no/100 Dollars (U.S. $75,277.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 01, 2033. This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in St. Joseph County, Indiana...

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right; to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

The remaining language of the mortgage defines the obligations between the Lender

(Trustcorp) and the borrower (Kristin), without any reference to MERS.  The mortgage states that "Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower."  It does not require any notice to MERS.

The Seventh circuit has described MERS as follows: "It is a membership organization that records, trades, and forecloses loans on behalf of many lenders, acting for their accounts rather than its own". *Mortgage Electronic Registration Systems, Inc., v. Estrella*, 390 F.3d 522, 524-5 (7th Cir. 2004). The Court in *Estrella* found that when MERS is a nominee it is "holding title to the mortgage, but not the note". (*Id*. At 525).

For a mortgage lien to exist, there must be some obligation for the lien to secure. *Carpenter v. Longan,* 83 U.S. 271, 21 L.Ed. 313 (1872), *Egbert v. Egbert*, 132 N.E.2d 910, 918 (Ind. 1956).

The only way Everhome could hold a perfected secured claim would be if it had the right to collect upon the Note and held the Mortgage on the date of the filing of the bankruptcy.  The only way it could have held the Mortgage on the date of the filing of the bankruptcy would have been if the Mortgage had been properly assigned to Everhome prior to the filing.

### B.   Assignment of Mortgage

The Assignment of Mortgage filed with the amended proof of claim has been fabricated. It states:

> FOR VALUE RECEIVED, the undersigned, as Beneficiary, hereby grants, conveys, assigns and transfers to EverHome Mortgage Company...all beneficial interest under the certain MORTGAGE dated August 15, 2003, executed by KRISTIN M. LEE to Mortgage Electronic Registration Systems, Inc., as nominee for Trustcorp Mortgage Company and recorded on September 29, 2003, in Instrument Number 0362577, in St. Joseph County, Indiana.
> As set forth in said Mortgage and incorporated by reference therein.  TOGETHER with

8

note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrue to said MORTGAGE. (Ex. 6).

Under I.C. 32-21-4-1(a)(1), a conveyance or mortgage of land or any interest in land must be recorded.  Under I.C. 32-21-4-2(b), I.C. 32-29-1-8,  and I.C. 32-29-2-1, in order to perfect a security interest in real estate, any assignment of a mortgage must be recorded.  The statutes do not provide an exception for the process touted by MERS to "eliminate the need to prepare and record assignments."

Indiana Recording Statutes

Since July 2, 1877, Indiana law has required recording of assignments of mortgages.  The purpose of the recording statutes and the opportunity to record assignments permits assignees the opportunity of giving notice of their rights by procuring and putting of record an assignment of a mortgage.  Neglect on the part of the assignee to do so makes the assignment void as against a bona fide purchaser.

Over one hundred years ago, the Indiana Supreme Court decided *The Connecticut Mutual Life Insurance Company v. Talbot, et al.*, 113 Ind. 373, 14 N.E. 586 (Ind. 1887).  The Court found that "It is settled everywhere, that unrecorded assignments of mortgages are void as against subsequent purchasers, whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts."  *Id. at 376.*

The importance of recording assignments is illustrated in *Citizens State Bank of Noblesville v. Julian*, 54 N.E. 390 (Ind. 1899).  The facts of that case are, that in 1876 Julian entered into a mortgage and three notes to Bonebrake.  The mortgage was recorded.  Two days later, Bonebrake sold and assigned the notes by endorsement to Citizens Bank.  There was no

9

assignment of the mortgage.  There was nothing recorded.  In January 1877, Macy sold to Diggs notes secured by a prior recorded mortgage on the same land which was executed in 1874.  In March 1877, Diggs initiated an action to foreclose, naming Bonebrake as a defendant, but not naming Citizens Bank.  The foreclosure progressed to sheriff sale in April 1877, where Diggs purchased the property.  In 1881, Diggs sold the property to Moorman.  When Moorman died in 1888, the property passed to Thomas and Whitson.  In March 1889, a partition action commenced, and the real estate in question was set off to Whitson.

On July 2, 1877, the statute requiring recording of assignment of mortgages became effective. The sections of the statute cited by the court are:

> Any mortgage or record, or any part thereof, may be assigned by the mortgagee, or any assignees thereof, either by an assignment entered on the margin or such record, signed by the person making the assignment and attested by the recorder, or by a separate instrument executed and acknowledged before any person authorized to take acknowledgments, and recorded on such margin, or in the mortgage records of the county in which case such assignment shall be noted in such margin by the recorder, by reference to the book and page where such assignment is recorded.  And after such entry is made of record, the mortgagor and all other persons shall be bound thereby, and the same shall be deemed a public record.

The case was initiated in 1893 by Citizens Bank against Julian to recover on the notes and foreclose the mortgage.  The Indiana Supreme Court affirmed the trial court which found that Diggs, Moorman, and Whitson were innocent purchasers.

The two questions as framed by the Court on appeal were:

(1) Was Citizens Bank, as assignee of the notes from Bonebrake, required to record the assignment after the effect of the recording act; and

(2) If so, was Whitson protected against Citizens' claim as a good faith purchaser.

The Court found that although the Act of 1877 was not in effect in 1876 when Bonebrake assigned the notes to Citizens, Citizens failed to record the assignment as permitted by the Act of 1877, before the intervention of the bona fide purchaser.

Indiana law in 2010 has not changed. The language of I.C. 32-29-1-8 and I.C. 32-29-2-1 mirror the language of the Act of 1877. An unrecorded assignment of a mortgage does not provide protection against a bona fide purchaser.

An assignment of a mortgage is invalid against a subsequent purchaser unless such assignment be of record. *In re Buchner; Illinois Nat. Bank v. Summers*, 205 F. 454 (7th Cir. 1913), see also, *Bowling v. Cook*, 39 Iowa 200, 1874 Iowa Sup. LEXIS 236 (1874).

Because there was no pre-petition recording of an assignment from Trustcorp to Everhome, the Debtor, under 11 U.S.C. §544(a)(3) steps into the shoes of a bona fide purchaser. *In The Matter of Sagamore Park Properties*, 1995 Bankr. LEXIS 2158 (Bankr. N.D. Ind. 1995).

### C.  The Note

The assignment of a Note by endorsement does not carry with it the assignment of the underlying mortgage unless the assignment of the underlying mortgage has been recorded. *Perry v. Fisher*, 65 N.E. 935 (Ind. Ct. App. 1903). "An assignment of a mortgage without a transfer of the underlying note is a nullity." *In re BNT Terminals, Inc.*, 125 B.R. 963, 970 (Bankr. N.D. Ill. 1990).

In this case, Everhome did not have possession of the Note at the time of the filing of the bankruptcy, and, therefore, can not have even an unsecured claim against the Debtor.

It has long been the law of Indiana that an assignee can lose the opportunity to object by not recording the endorsement of the notes until years after the assignment. *Citizens State Bank*

11

*of Nobelsville v. Julian*, 54 N.E. 390 (Ind. 1899).

Due to the separation of the Note from the Mortgage, Everhome could not have a valid secured claim against the property.  In order for Everhome to have any claim against Kristin, it must prove the chain of negotiation that gives it the right to enforce the Note.

Even if Everhome has possession of the Note, proof of  the chain of negotiation is required to determine what amount it is owed.  Everhome can never be entitled to more than the amount that it paid for the Note.  *Turpin v. Dye*, 11 N.E.2d 70 (Ind. Ct. App. 1937).

The Shell Game

Who is entitled to enforce the Note?

A holder is entitled to enforce an instrument.  I.C. 26-1-3.1-301.  A "Holder" is a person in possession of a negotiable instrument payable either to bearer or to an identified person if the identified person is in possession of the instrument.  I.C. 26-1-1-201.  MERS was never a party to the Note.  See, *Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance*, 704 N.W.2d 784 (Neb. 2005) (MERS arguing that it does not own promissory notes secured by mortgages and has no right to payments made on the notes), *Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas*, 2009 Ark. 152, 2009 Ark. LEXIS 121.

Therefore, MERS was never a "Holder" of the Note and any transfer to Everhome from MERS transferred only the rights MERS held, which were none.  "Absent proof of a transfer from a holder, or from a transferor who had the rights of a holder, the transferee is no better than an assignee of a simple contract obligation who must plead and prove consideration and performance of all conditions precedent."  *American National Bank & Trust Co. v. St. Joseph*

*Valley Bank, et. al.*, 389 N.E.2d 379 (Ind. Ct. App. 1979), see also, *Runyon v. Snell, 18 N.E. 522 (Ind. 1888)* (One who purchases property from an agent must affirmatively show that the agent had authority to receive payment).

In *In re Wells*, 407 B.R. 873 (Bankr.N.D. Ohio 2009), the Court explained the requirements of the Uniform Commercial Code regarding transfer of Notes. The Court said,

> A promissory note is usually a negotiable instrument, which provides the person entitled to enforce the note the right to payment of the obligation it represents.[4]  A person is entitled to enforce a note when that person falls into one of three categories.[5]  One such category is when the person is a holder of the note.[6]  Generally, a person is a holder of the note by having physical possession of the note, which has either been endorsed to that person or endorsed in blank.  A note may be endorsed by an allonge, which is a paper "affixed to the instrument," which then becomes part of the instrument.
> ...
> A person may be entitled to enforce a negotiable instrument if it has possession of the note without proper endorsement, however, proof that the person has rightful possession is required.[7]
> ...
> Once a note is endorsed, its negotiation is complete upon transfer of possession. The transfer of possession requires physical delivery of the note "for the purpose of giving the person receiving delivery the right to enforce the instrument."[8]
>
> [Citations in original opinion omitted.  Footnote references Indiana statutory sections for the Uniform Commercial Code]

It is not enough for Everhome to simply claim that because it holds a note endorsed in blank it is entitled to enforce that note against the property of the estate.  The Official Comment

---

[4]  I.C. 26-1-3.1-104

[5]  I.C. 26-1-3.1-301

[6]  I.C. 26-1-1-201

[7]  I.C. 26-1-3.1-301

[8]  I.C. 26-1-3.1-201, I.C. 26-1-3.1-203

to I.C. 26-1-3.1-203 states that the purpose of this section is,

> To make it clear that:
> The section applies to any transfer, whether by a holder or not.  Any person who transfers an instrument transfers whatever rights he has in it.  The transferee acquires those rights even though they do not amount to "title."  I.C. 26-1-3.1-203 (P.L. 222-1993, §5).

> The person in possession of the Note must prove proper negotiation of the Note.

Everhome cannot collect because negotiation has not occurred.  *Miladin v. Istrate*, 119 N.E.2d 12 (Ind. Ct. App. 1954).

<u>D.  Violation of the Automatic Stay</u>

On the date of the filing of the bankruptcy, all property becomes property of the estate. Any acts taken to perfect an interest after the issuance of the automatic stay are in violation of 11 U.S.C. §362.

In *Rogan v. Bank One (In re Cook)*, 457 F.3d 561 (6th Cir. 2006), the Court, applying 11 U.S.C. §544(a)(1) and  Kentucky law, found that a post-petition assignment did not violate the automatic stay because it did not involve property of the estate.  In this case, however, this Court is dealing with Indiana law and the property has remained in the bankruptcy estate.

In *In re BNT Terminals, Inc.*, 125 B.R. 963 (Bankr. N.D. Ill. 1990), a bankruptcy court determined that any acts against property of the estate without court approval violated the automatic stay.  Likewise, any post-petition recordation of documents violates the automatic stay and is a nullity.  *In re Glanz*, 205 B.R. 750 (Bankr. Dist. Maryland 1997), *In re Brooks*, 871 F.2d 89 (9th Cir. 1989), *In re Penfil*, 40 B.R. 474 (Bankr. E.D. Michigan 1984).  An assignment after the fact does not cure statutory defects.  *U.S. Bank National Association v. Ibanez*, 2009 Mass. LCR LEXIS 41 (2009).

14

E.  Bona Fide Purchaser

The express language of 11 U.S.C. § 544(a)(3) grants the Debtor the rights of a bona fide purchaser of real property.  Any transfer of real property not properly perfected as to a bona fide purchaser as of the petition date is of no effect against the debtor-in-possession.  The definition of a "bona fide purchaser," and thus the requirements for perfection against such an entity, are governed by state law.  *In re Canady*, 376 B.R. 260 (Bankr. N.D.Ind. 2007).

In this case, Plaintiff has the rights of a bona fide purchaser under bankruptcy law, and seeks to set aside the mortgage.

F.  Attorney Fees

Defendants are not entitled to recover their attorney fees as a matter of law. Further, Defendants' Affidavit in Support of Request for Attorney Fees raises specific questions so that there are genuine issues of material fact. For the following reasons, the Court must deny Defendants' request.

Under Indiana law, litigants are generally obligated to pay their own attorney fees in the absence of a statute, agreement, or stipulation authorizing such an award. *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.*, 759 N.E.2d 1088, 1095 (Ind. Ct. App. 2001). Accordingly, a contract allowing for recovery of attorney fees is enforceable, if the contract is not contrary to law or public policy. *Id.  Dempsey v. Carter*, 797 N.E.2d 268, 2003 Ind. App. LEXIS 1591 (Ind. Ct. App. 2003). Specifically regarding mortgages in Indiana, a mortgage must expressly provide for the payment of all attorney fees incurred as a consequence of litigation involving the mortgagor and mortgagee. *Crum v. Avco Financial Services, Inc.*, 552 N.E.2d 823, 1990 Ind. App. LEXIS 444 (Ind. Ct. App. 1990). See also *Money Store Inv. Corp. v. Summers*,

15

822 N.E.2d 223, 2005 Ind. App. LEXIS 172 (Ind. Ct. App. 2005).

Defendants claim entitlement to attorney fees under Paragraph 7 of the Mortgage. However, Paragraph 6 (C) of the Note and Paragraphs 10 and 18 of the Mortgage are the only sections that specifically and expressly provide for the occasions when Defendants are entitled to attorney fees. Defendants do not allege any facts to trigger the imposition of attorneys' fees against Plaintiff under Paragraph 6 (C) of the Note and Paragraphs 10 and 18 of the Mortgage.

Defendants contend that the Court must determine and effectuate the "intent of the parties" with respect to Paragraph 7 of the mortgage. Page one of the Mortgage states:

> This Security Instrument secures to Lender:(a) the repayment of the debt evidenced by the Note ...; (b) the repayment of all other sums, with interest, *advanced under paragraph 7* to protect the security of this Security Instrument; and ( c) ..." (Emphasis added).

Specifically, the covenant in Paragraph 7 requires Borrower to pay obligations that run with the Property, i.e. taxes and special assessments levied on the Property, leasehold payments or ground rents on the Property, premiums for insurance on the Property, and governmental or municipal charges, fines and impositions on the Property. Also, it requires the Borrower to pay the entity directly which is owed the payment. Paragraph 7 allows the Lender to recoup the advances in the event Borrower fails to pay the advances that rise to the level of impairing Lender's collateral.  Paragraph 7 is intended to protect the rights of lender when third party entities threaten the security. As such, litigation with the Borrower, and Defendants' attorneys fees in that litigation, as in the present case, do not trigger any consequences of Paragraph 7.

In *Wiswall v. Campbell*, 93 U.S. 347 (U.S. 1876), the Supreme Court long ago established the effect of a creditor filing a proof of claim:

16

> Every person submitting himself to the jurisdiction of the bankrupt court in
> the progress of the cause, for the purpose of having his rights in the estate
> determined, makes himself a party to the suit, and is bound by what is
> judicially determined in the legitimate course of the proceeding. A creditor
> who offers proof of his claim, and demands its allowance, subjects himself to
> the dominion of the court, and must abide the consequences. His remedies for
> the purpose of this proof are prescribed by the law. *Id* at 351.

Everhome  chose to file a claim and is under the jurisdiction of this bankruptcy court and must abide by its prescribed law. However, Defendants fail to state any statutory basis within the bankruptcy code justifying their entitlement to attorney fees.

Requiring a debtor to pay for a creditor's attorney fee simply because debtor invoked the basic and traditional functions of a bankruptcy court will deter debtors from seeking the fresh start afforded under the bankruptcy code.  Allowing a creditor to be awarded attorneys' fees when the creditor has failed to comply with the proscribed requirements of Fed. R. Bankr. P. 3001(c) and Fed. R. Bankr. P. 3001(d) encourages the filing of undocumented proofs of claim, and places an onerous and potentially costly burden on the Debtor who seeks only solid evidence of the claims filed against the estate.

 The U.S. Supreme Court, in its decision *Gardner v. New Jersey*, 329 U.S. 565, (U.S. 1947) established:

> A proof of claim is, of course, prima facie evidence of its validity. Whitney v.
> Dresser, 200 U.S. 532. But the bankruptcy court whose aid is sought for
> enforcement of an asserted claim is not bound to treat the tendered proof as
> conclusive. When objections are made, it is duty bound to pass on them. That
> process is, indeed, of basic importance in the administration of a bankruptcy estate
> whether the objective be liquidation or reorganization. Without that sifting
> process, unmeritorious or excessive claims might dilute the participation of the
> legitimate claimants. It is traditional bankruptcy law that he who invokes the aid
> of the bankruptcy court by offering a proof of claim and demanding its allowance
> must abide the consequences of that procedure. *Wiswal v. Campbell*, 93 U.S. 347,

351. *Gardner* at 573.

While liens existing at the commencement of bankruptcy proceedings have always been preserved, it has long been a function of the bankruptcy court to ascertain their validity and extent and to determine the method of their liquidation. *Gardner* at 576-577. Indeed, before a plan of reorganization can be designed in accord with fair and equitable requirements, liens must be disentangled and their relative priorities ascertained. *Gardner* at 576-577.

The Court has an independent duty to review all requests for attorneys' fees. See *In re Rockford Prods. Corp.*, 2009 Bankr. LEXIS 2496, 11-12 (Bankr. N.D. Ill. Aug. 24, 2009).

The role of the court to review fee requests cannot be understated. It is indeed vital and so, by the very nature of Defendants' request, bankruptcy law implies there is a material issue of fact to be determined by the court. The court in *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D. Ill. 1987) explained the court's role as follows:

> The burden of proof to show entitlement to fees is, in all fee matters, always on the applicant. In re Lindberg Products, Inc., 50 B.R. 220, 211 (Bankr. N.D. Ill. 1985); In re Harman Supermarket, Inc., 44 B.R. 918, 920 (Bankr. W.D. Va. 1984); In re Horn & Hardart Baking Co., 30 B.R. 938, 939 (Bankr. E.D. Pa. 1983). This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor. In re Hotel Associates, Inc., 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981). Even if no objections are raised to a fee request, the Bankruptcy Court is still not bound to award the fee as prayed. Indeed, this Court has the independent authority and responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed. In re NRG Resources, Inc., 64 B.R. 643, 650 (W.D. La. 1986); In re Esar Ventures, 62 B.R. 204, 205 (Bankr. D. Ha. 1986); In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 585  (Bankr. D. Utah 1985); In re Wilson Foods Corp., 36 B.R. 317, 320 (Bankr. W.D. Okla. 1984). The commentators agree. As one stated, ". . . . the court continues to retain the ultimate responsibility for ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330." 2 Collier on Bankruptcy, Paragraph 328.02 at 328-8 (15th Ed. 1986). Others

are more specific: "Even if no party in interest objects . . . . the court should review the application to make sure the compensation sought has been earned and is reasonable." R. E. Ginsberg, Bankruptcy, Paragraph 4501 (1985). "The bankruptcy judge can and must apply his own expertise sua sponte, if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system." Lavien, Fees as Seen from the Bankruptcy Bench, 89 Com. L.J. 136, 138 (March 1984). This Court should not and will not merely rubber-stamp fee petitions. Because objections to fees are presented so rarely in bankruptcy, the Court's role in this regard is critical. *Pettibone* at 299-300.

_____Defendants are only entitled to those fees that the Court determines are reasonable and have been earned. This in turn requires a review of the facts in this case to justify Defendants' fees.

Material Issues of Fact Within Defendants' Affidavit

As the *Pettibone* court noted, the request for fees must be reviewed for reasonableness and that they were indeed earned. See also *Dempsey v. Carter (In re Dempsey)*, 2006 U.S. Dist. LEXIS 89434, 11-13 (S.D. Ind. Dec. 8, 2006). (A court has broad discretion to determine what constitutes a reasonable fee, must be wary of the potential for abuse and avoid attorney fee clauses from becoming a tool for wasteful diversion of an estate at the hands of secured creditors, who, knowing that the state must foot the bills, fail to exercise restraint in enforcement expenses).

In the present case, a review of Defendants' Affidavit in Support of Request for Attorney Fees  along with its Exhibit 1 raise a host of material questions:

1) Are the hourly rates reasonable?

 2) Is the time entered reasonable?

3) An entity "Forum" is listed at least five times in the Affidavit- who is Forum?

4) Who is counsel for Forum?

5) Forum is not a party - what role or interest does Forum have in this litigation?

6) Everhome, EverBank and MERS are seeking attorney fees when only one could possibly recover under the Paragraph 7 of the mortgage, so which one would be entitled?

7) Are the fees per se not reasonable because Defendants amount of fees requested, $31,000.00, is almost half the amount, $70,105.97, of EverHome Mortgage's Proof of Claim 22?

8) Do the actual entries in Exhibit1 meet the "Guidelines for Compensation for Services and Reimbursement of Expenses of Professionals", Revised January 1, 1994, as published on the Court's website (hereafter "Guidelines")?

## CONCLUSION

The issues in this case are not merely problems with paperwork or a matter of dotting i's and crossing t's.  Instead they lie at the heart of the protections given to debtors under Indiana and Bankruptcy law.   "It is settled everywhere, that unrecorded assignments of mortgages are void as against subsequent purchasers, whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts." *Citizens State Bank v. Julian*, *supra.*

This Court should not allow the obfuscation engaged in by the Defendants to undermine the stringent requirements of Fed. R. Bankr. P. 3001(c) and 3001(d).  Through the fabrication and recordation of documents post-petition, Defendants have violated the automatic stay.

If the Court grants Defendants' Motion for Summary Judgment, it allows commercial interests to dictate policies and procedures that circumvent the law of the State of Indiana.  In addition, a grant of summary judgment in favor of Defendants jeopardizes the expectations of debtors that rely on the integrity and protections of the bankruptcy code.

Respectfully submitted,


 /s/ Debra Voltz-Miller
Debra Voltz-Miller (#15590-71)
**Voltz-Miller & Panowicz, P.C.**
Attorney for Debtors
1951 E. Fox St, South Bend, Indiana  46613
PH: (574) 289-1709
FX: (574) 289-1909


### <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for Debtor hereby certifies that a true and correct copy of the above and

foregoing document  was served upon the following via electronic mail on this 23rd day of

March, 2010:


Carina M. de la Torre and David J. Jurkiewicz, Attorneys for Defendants, and Debra L. Miller,
Standing Chapter 13 Trustee.


/s/ Debra Voltz-Miller

Debra Voltz-Miller